UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUZIE STEEN,                          )    No. 07-1395 SC
                                      )
        Plaintiff,                    )    ORDER GRANTING
                                      )    PLAINTIFF'S MOTION
    v.                                )    FOR SUMMARY JUDGMENT
                                      )    AND DENYING
MICHAEL J. ASTRUE, Commissioner of    )    DEFENDANT'S CROSS-
Social Security,                      )    MOTION FOR SUMMARY
                                      )    JUDGMENT
        Defendant.                    )
                                      )
_____)

I.    **INTRODUCTION**

        This matter is before the Court on cross-motions for summary

judgment filed by the plaintiff Suzie Steen ("Plaintiff" or

"Claimant") and the defendant Michael J. Astrue ("Defendant").

Docket Nos. 14, 20.  Plaintiff submitted a Reply.  Docket No. 23.

Plaintiff seeks review and reversal of the Social Security

Commissioner's final decision denying her claim for Social

Security Disability Insurance benefits.  For the reasons set forth

below, the Court GRANTS Plaintiff's Motion for Summary Judgment

and DENIES Defendant's Cross-Motion for Summary Judgment.

///

///

///

**United States District Court**
For the Northern District of California

1 | **II.**   <u>**BACKGROUND**</u>

2 |      A.   <u>Procedural</u>

3 |      Plaintiff, 56 years old, applied for Title II disability

4 | insurance benefits in August 2004, alleging onset of disability in

5 | February of 2004.  Administrative Record ("AR") 65.  The claim was

6 | denied initially and again on reconsideration.  AR 25.  Plaintiff

7 | then requested and was granted a hearing before an Administrative

8 | Law Judge ("ALJ").  <u>Id.</u>  On January 23, 2006, Plaintiff,

9 | represented by counsel, appeared and testified at the hearing.

10 | <u>Id.</u>  In addition, a vocational expert ("VE") testified.  <u>Id.</u>  In

11 | July 2006, the ALJ issued a decision finding that Plaintiff was

12 | not disabled.  AR 31.  The ALJ's decision became the final

13 | decision of the Commissioner when the Appeals Council denied

14 | Plaintiff's request for review.  AR 5-9.  Plaintiff subsequently

15 | filed the present action seeking judicial review of the

16 | Commissioner's decision pursuant to 42 U.S.C. § 405(g).

17 |      B.   <u>Medical</u>

18 |      Plaintiff, an avid recreational runner for many years, has a

19 | high school education and stopped working on February 2, 2004.  AR

20 | 74, 313.  Plaintiff admits that she stopped working because of the

21 | need to enter treatment for addiction to pain killers.  AR 213,

22 | 220, 245.  By all accounts, Plaintiff remained drug and alcohol

23 | free after entering treatment in February 2004.  AR 26.  The ALJ

24 | described Plaintiff's medical history as follows: "The medical

25 | record consists mainly of treatment notes from Kaiser, which

26 | reveal longstanding complaints of pain and fatigue, for which the

27 | claimant has undergone extensive testing and has been prescribed

28 |

United States District Court
For the Northern District of California

1  numerous medications." AR 26.  The ALJ also found that Plaintiff

2  suffers from "severe" impairments, as defined under the Social

3  Security Regulations.  These impairments include fibromyalgia,

4  rheumatoid arthritis, and Sjogren's syndrome.[1] AR 31.  The Court

5  notes that, according to the Administrative Record, Plaintiff has

6  sought medical care more than thirty times since 1999.  At the

7  overwhelming majority of these visits, Plaintiff complained of

8  excessive fatigue and chronic pain, especially in her shoulders,

9  neck, and back.  See, e.g., AR 131, 135, 139, 141, 149, 152, 171,

10 213, 237, 285, 292.

11

12 **III. LEGAL STANDARD**

13      To qualify for disability benefits, a claimant must show that

14 he or she is unable "to engage in any substantial gainful activity

15 by reason of any medically determinable physical or mental

16 impairment which can be expected to result in death or which has

17 lasted or can be expected to last for a continuous period of not

18 less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A).  In

19 making this determination, "an ALJ conducts a five step inquiry.

20 20 C.F.R. §§ 404.1520 & 416.920." Lewis v. Apfel, 236 F.3d 503,

21 508 (9th Cir. 2001).

22

23      [1]  Fibromyalgia is marked by chronic musculoskeletal pain
syndrome.  AR 348 (report by Dr. Ken Fye, Professor of Clinical
Medicine at University California San Francisco Medical Center).
24 Sjogren's Syndrome "is an autoimmune disease in which the body's
immune system mistakenly attacks its own moisture glands. . . .
25 Sjogren's may . . . cause dryness of other organs [besides the eyes
and mouth], affecting the kidneys, GI tract, blood vessels, lung,
26 liver, pancreas, and the central nervous system.  Many patients
experience debilitating fatigue and joint pain."  AR 125 (citing
27 www.sjogrens.org).

28                                   3

United States District Court
For the Northern District of California

> The ALJ first considers whether the
> claimant is engaged in substantial
> gainful activity; if not, the ALJ asks in
> the second step whether the claimant has
> a severe impairment (i.e., one that
> significantly affects his or her ability
> to function); if so, the ALJ asks in the
> third step whether the claimant's
> condition meets or equals one of those
> outlined in the Listing of Impairments in
> Appendix 1 of the Regulations [20 C.F.R.
> §§ 404.1520(d) & 416.920(d)]; if not,
> then in the fourth step the ALJ asks
> whether the claimant can perform in his
> or her past relevant work; if not,
> finally, the ALJ in the fifth step asks
> whether the claimant can perform other
> jobs that exist in substantial numbers in
> the national economy. 20 C.F.R. §§
> 404.1520(b)-404.1520(f)(1) & 416.920(b)-
> 416.920(f)(1).

Id.

Courts may set aside a decision of the ALJ if it is not
supported by substantial evidence. 42 U.S.C. § 405(g); Holohan v.
Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). "Substantial
evidence" is the relevant evidence which a reasonable person might
accept as adequate to support the ALJ's conclusion. Reddick v.
Chater, 157 F.3d 715, 720 (9th Cir. 1998). In order to be
"substantial," the evidence must amount to "more than a
scintilla," but need not rise to the level of a preponderance.
Holohan, 246 F.3d at 1202. Where the evidence could reasonably
support either affirming or reversing the ALJ's decision, a court
may not substitute its judgment for the ALJ's decision. Id.

IV.  **DISCUSSION**

Plaintiff raises numerous arguments regarding the ALJ's
findings at steps two, three, four, and five. The Court addresses

4

these in turn.

A.   <u>Depressive Disorder</u>

Plaintiff argues that the ALJ erred by not finding her depressive disorder to also be a "severe" impairment at step two. The Social Security Regulations define "severe" as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The primary evidence relied on by Plaintiff in support of her claim that her depression is severe is a psychological evaluation conducted by Dr. Richard Kjelson in October 2004.  AR 218.  Dr. Kjelson stated, in part:

> The subject is experiencing depression, frequent memory functioning difficulties and has stated that her abuse of illict substances and alcohol are only in eight months remission.  It is probable that she is in need of a more lengthy period of sobriety and continued involvement in AA, as well as a [sic] psychotherapy for depression are needed at present [sic]. It is estimated that these difficulties, in combination with her memory functioning deficits, would currently create generally moderate impairment in her overall working abilities, as well as in the specific capacities for consistently attending work in a reliable manner and completing work tasks adequately.

AR 222.

The ALJ rejected this examining psychologist's finding that Plaintiff's depression resulted in a moderate impairment, and instead relied on the reports of two state agency medical consultants, neither of whom examined Plaintiff.  The ALJ stated:

> Although the psychologist examiner assessed moderate limitations, which were based largely on the claimant's

5

1

2

3

4

5

United States District Court
For the Northern District of California

> subjective complaints, . . . there is no significant supportive evidence from a treating source, and the record as a whole establishes lesser limitations. In this regard, I note that the state agency medical consultants who evaluated the claimant's mental functioning indicated that she has only mild limitations.

AR 29.

Generally, "an examining physician's opinion carries more weight that a reviewing physician's." Holohan, 246 F.3d at 1202. "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. "The opinion of a nonexamining physician cannot by itself constitute evidence that justifies the rejection of the opinion of . . . an examining physician." Id. at 831. "In addition, the regulations give more weight to opinions that are explained than those that are not . . . . ." Holohan, 246 F.3d at 1202.

For the following reasons, the Court finds that the ALJ erred in concluding that Plaintiff's mental impairments were mild, rather than moderate limitations. To begin, the reports of the two reviewing medical consultants leave much to be desired. The first report is four pages long and contains approximately 12 multiple choice questions. AR 224-27. Each question contains various boxes for the medical consultant to check if that

6

particular answer applies. Id. None of the checked boxes contain any type of written explanation by the consultant. Id. Thus, although this report indicates that Plaintiff's mental impairments are not severe and her degree of limitation is "mild," the absence of any explanation for these diagnoses undermines significantly the weight of this report. This is especially true given that the report was made without actually examining the Plaintiff. See Holohan, 146 F.3d at 1202.

The second report, entitled Physical Residual Functional Capacity Assessment and completed in December of 2004, is equally problematic. AR 229-36. The report is comprised of six pages of multiple choice questions and one page of largely illegible handwritten notes. Id. The report states that Plaintiff can stand and/or walk for 6 hours per day, can sit for 6 hours per day, can frequently lift 25 pounds, can frequently climb stairs, ladders, rope or scaffolds, frequently crouch and crawl, and concludes that the severity of Plaintiff's symptoms are disproportionate to the expected severity based on Plaintiff's "medically determinable impairments." AR 234. The report also states that Plaintiff can occasionally lift 50 pounds, a conclusion the ALJ rejected in his decision. See AR 29 (finding that the ability to lift even 40 pounds was "in excess of the functional capacity assessed herein"). In addition, this report, like the previous report, contains no legible explanations regarding its findings. This, in combination with the ALJ's own rejection of a finding within the report, make its value questionable. This is especially true in light of the fact that

7

United States District Court
For the Northern District of California

this report, similar to the first report, contradicts the opinions
of the examining psychologist Dr. Kjelson.

Finally, numerous other medical reports contain documentation
of Plaintiff's feelings of depression.  See, e.g., AR 131 (stating
Plaintiff felt "discouraged – [and that] simple things [were]
insurmountable"); AR 149 (noting that doctor's diagnostic
impression was "depression/anxiety"); AR 161 (doctor report
stating Plaintiff was "feeling very depressed and anxious"); AR
237 (stating Plaintiff suffers from depression, anxiety, and panic
attacks); AR 314 (stating "[p]ast medical history is significant
for a history of depression").

In light of the above, the Court concludes that the ALJ's
stated reasons for rejecting the opinions of Plaintiff's examining
psychologist Dr. Kjelson are not "specific and legitimate reasons
. . . supported by substantial evidence in the record." Lester,
81 F.3d at 830-31.  Based on the evidence, the Court finds that
Plaintiff's depression creates a moderate, rather than mild,
limitation.  The effect of this on Plaintiff's overall residual
functional capacity is discussed below.

B.   Treating Physician's Opinion

Plaintiff asserts that the ALJ improperly rejected the
medical opinions of Plaintiff's treating physician, Dr. Dermody.
Dr. Dermody had seen Plaintiff, on average, once every three
months for more than three years, as of December 2004.  Where "a
treating doctor's opinion is contradicted by another doctor, the
Commissioner may not reject this opinion without providing
specific and legitimate reasons supported by substantial evidence

8

in the record for doing so." <u>Lester</u>, 81 F.3d at 830.

In a report prepared by Dr. Dermody titled "Fibromyaligia Residual Functional Capacity Questionnaire," he made the following findings: Plaintiff suffered from Sjogren's Syndrome, depression, and chronic pain syndrome; Plaintiff exhibited symptoms of chronic fatigue, muscle weakness, numbness and tingling, subjective swelling, and multiple tender points; Plaintiff had severe and constant pain in her cervical spine, thoracic spine, shoulders, hands/fingers, and knees/ankles/feet; this pain was exacerbated by fatigue, movement/overuse, and by being in a static position; the pain was reasonably consistent with the symptoms and functional limitations described in the report; and Plaintiff was not a malingerer. AR 237-38. Regarding limitations on possible work, the doctor concluded the following: Plaintiff's pain was severe enough to interfere with attention and concentration frequently throughout a typical workday; Plaintiff could not walk the length of a city block without rest or severe pain; Plaintiff can sit at one time for 30 minutes before needing to stand, and can stand for 15 minutes before needing to sit; Plaintiff should never lift more than 20 pounds and rarely lift more than 10 pounds; Plaintiff should never climb ladders and rarely twist, stoop, or climb stairs; and Plaintiff has significant limitations with reaching, handling or fingering. AR 238-41.

In rejecting these findings by Plaintiff's treating physician, the ALJ gave several reasons. First, the ALJ stated:

> I have considered the form completed by
> Dr. Dermody, which reflects that the
> claimant is essentially incapacitated due

United States District Court
For the Northern District of California

1

to her multiple reported symptoms and
limitations. . . . I find the level of
impairment indicated is inconsistent with
Dr. Dermody's own treatment notes . . . .
AR 29.

Where a treating physician's recommendations are "so extreme
as to be implausible and [are] not supported by any findings made
by any doctor," an ALJ may properly reject these recommendations.
Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).  Such is
not the case here, however.  Instead, Dr. Dermody's handwritten
notes are, with the exception of perhaps five words, illegible.
See AR 249-73; 334-47.  The rest of notes that appear in the
Administrative Record either relate to issues distinct from those
relevant to the present action - i.e., notes from a instance where
Plaintiff complained of a rapid heart beat; notes from a skin
biopsy; and notes from a mammogram - or are medical charts which
would require a medical professional to decipher.  See AR 336,
337, 340-47.  After careful review, the Court can find nothing in
these notes that could be construed as being inconsistent with the
level of impairment described by Dr. Dermody in his report.

Furthermore, "[t]o say that medical opinions are not
supported by sufficient objective findings . . . does not achieve
the level of specificity our prior cases have required."  Embrey
v. Bowen, 849 F.2d 418, 421 (9th Cir. 1998).  "The ALJ must do
more than offer his conclusions.  He must set forth his own
interpretations and explain why they, rather than the doctors',
are correct."  Id. at 421-22.  The ALJ must "give proper weight to
the subjective elements of the doctors' diagnoses.  The subjective
judgments of treating physicians are important, and properly play

10

**United States District Court**
For the Northern District of California

a part in their medical evaluations." _Id._ at 422.  "Accordingly, the ultimate conclusions of those physicians must be given substantial weight."  _Id._

In rejecting the level of impairment described by Dr. Dermody, the ALJ also noted the implausibility of a timeline provided by Dr. Dermody.  In response to a question asking "[w]hat is the earliest date the description of symptoms and limitations on this questionnaire applies?" Dr. Dermody wrote "1994," which would have been ten years prior to the date of the alleged onset of disability.

An implication by Dr. Dermody that Plaintiff's impairments had existed with the same severity for the last ten years would clearly raise suspicion regarding the accuracy of the rest of the report, as there is no question that Plaintiff was capable of actively working for all of those years.  Such an implication, however, is difficult to reconcile with the rest of the report.

There are, instead, other explanations for this discrepancy. For example, it is possible that the doctor wrote 1994 assuming that the question sought the date when the symptoms first began to manifest themselves, rather than the date at which the symptoms reached their present severity.  Such an explanation is consistent with the conclusions of other doctors who found that Plaintiff's symptoms began in or near 1994.  _See_, _e.g._, AR 292, Examination Report of June 29, 2005, by Dr. Kenneth Fye (concluding, after an examination of Plaintiff, that "[a]pproximately ten years ago, she developed a cryptic musculoskeletal pain syndrome associated with a positive rheumatoid factor"); AR 324, Medical Report by Dr. Neal

11

Birnbaum dated October 29, 1999 (stating "[a]pproximately 3 1/2 years ago the patient developed 'exhaustion,' diffuse aching, muscle soreness, and stiffness").  Although this inconsistency in Dr. Dermody's report is worth noting, it does not, in this Court's view, undermine the report's many other conclusions.

Finally, the ALJ rejected the report of Dr. Dermody because it was inconsistent with "claimant's own statements as to her level of activity, as well as [] the weight of the additional evidence."  AR 29.  Regarding the weight of the additional evidence, the Court finds that it supports, rather than undercuts, Dr. Dermody's assessment.  In 1999, Plaintiff was examined by a rheumatologist who reported that Plaintiff had a positive rheumatoid factor, a prior diagnosis of rheumatoid arthritis, tingling in the hands and feet, and pain in the muscles and joints.  AR 324.  Although at that time the doctor thought Plaintiff's symptoms were more of a nuisance than a true disability, this doctor also concluded that her symptoms were consistent with fibromyalgia.  AR 325.  In 2000, another examining physician found that Plaintiff had "fulfilled criteria in the past, and probably presently, for fibromyalgia with the marked abnormal fatigue."  AR 323.  In 2001, Dr. Ken Sack, a Professor of Clinical Medicine at University of California San Francisco Medical Center, found that Plaintiff had "chronic muscoskeletal pain syndrome" and an "elevated rheumatoid factor."  AR 314.  In 2004, Plaintiff was seen at Kaiser hospital on approximately ten separate occasions, more often than not complaining of chronic pain in her shoulders, neck, and back and of excessive fatigue.

12

AR 131-71.  In April 2005, Plaintiff was examined, for the second

time, by Dr. Harrington.  His conclusions, in relevant parts, are

as follows:

> [Plaintiff] has an extremely complex past
> [medical] history. . . .  [She] relates a
> many-year history of very widespread
> arthralgias involving essentially all
> joints and accompanied by marked and
> prolonged stiffness . . . .  When seen by
> myself approximately three to four years
> ago, the diagnosis was unclear and she
> was referred to UCSF to see Dr. Ken Sack.
> . . .  Since that time, she was continued
> to have all of the aforementioned
> symptoms, without relief. . . .  It
> remains difficult to characterize
> definitively her illness.

AR 329.

In June of 2005, Plaintiff was examined by Dr. Fye at the

University of California San Francisco Medical Center.  AR 292.

He opined that, given the symptoms, it would be possible to

"explain all this patient's presentation with a diagnosis of

Sjogren's syndrome and secondary fibromyalgia."  AR 293.  She was

also seen three time in 2005 by Dr. Dugan.  During her first

visit, the doctor noted that she was feeling very poorly because

of a drug, Decadron, she had been given to help with her symptoms.

AR 333.  At her second visit, the doctor noted that Plaintiff

"comes in today still complaining of joint pain."  AR 332.  At her

final visit, in September 2005, the doctor noted that she was on a

number of new medications and that she "[o]verall feels much

better that when I saw her before."  AR 331.  In addition, she was

again diagnosed with Sjogren's syndrome.  Id.  Finally, in a

letter dated August 28, 2006, Dr. Fye, who had examined Plaintiff

in 2005, stated:

13

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

> [Plaintiff] is a 54 year old woman with
> Sjogren's syndrome complicated by a
> monoclonal gammopathy and fibromyalgia.
> The manifestations of Sjogren's syndrome
> include, but are not limited to,
> xerostomia with dysphagia, . . . and a
> host of extra-exocrine gland problems . .
> . . Fibromyalgia, a chronic
> musculoskeletal pain syndrome, is
> frequently seen in these patients. The
> monoclonal gammopathy puts patients at
> risk for everything from myeloma to
> hyperviscosity syndrome. The
> constitutional symptoms, such as malaise,
> lethargy, and fatigue, associated with
> the disorder are frequently as
> debilitating as the organ related
> manifestations. The specific problems
> Ms. Steen has to deal with include
> keratoconjunctivitis sicca, xerostomia,
> arthritis, fibromyalgia, dysphagia, and
> overwhelming constitutional symptoms. In
> addition, she has significant monoclonal
> gammopathy. I feel that the totality of
> her disease associated symptoms render
> her disabled. Since all of her
> conditions are chronic and not cureable,
> I also feel her disability is permanent.

16
17
18

AR 348.[2]  The conclusions of Dr. Fye, a clinical professor in
rheumatology, are particularly compelling given that the Social
Security "regulations give more weight to . . . the opinions of

19
20
21
22
23
24
25
26
27

---

[2]  This letter was submitted after the hearing, and therefore
was not considered by the ALJ.  The Appeals Council, however, made
the letter part of the record before it declined to review the
ALJ's decision.  See AR 9 (stating the "Appeals Council has
received additional evidence which it is making part of the
record").  It is appropriate, therefore, for this Court to consider
the letter.  See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir.
1993) (stating that the court would "consider on appeal both the
ALJ's decision and the additional material submitted to the Appeals
Council"); see also Bates v. Sullivan, 894 F.2d 1059, 1063 (9th
Cir. 1993) (reviewing de novo the Appeals Council refusal to review
the ALJ's decision where the claimant presented new and material
evidence to the Appeals Council after the hearing before the ALJ).
As there can be no real dispute that this letter represents
"material evidence," the Court may consider it.  20 C.F.R. §
404.976(b).

28

United States District Court
For the Northern District of California

specialists concerning matters relating to their specialty over

that of nonspecialists, <u>see</u> [20 C.F.R.] § 404.1527(d)(5)."

<u>Holohan</u>, 246 F.3d at 1202.

As should be clear, the wealth of medical evidence supports

Plaintiff's position that she suffers from substantial pain and

fatigue.  Moreover, all of the above-listed medical reports are

from doctors who actually treated or examined Plaintiff.  In

contrast, the Commissioner points to three agency-requested

consultations, only one of which involved an actual examination of

the Plaintiff, in support of his conclusion that Plaintiff is not

disabled.

The first of these was performed by Dr. Julian Espino.  AR

213.  Dr. Espino acknowledged that Plaintiff had previously been

diagnosed with fibromyalgia and rheumatoid arthritis by other

doctors.  <u>Id.</u>  The diagnosis for the arthritis, according to Dr.

Espino, was "due to her chronic pain specifically in the neck,

shoulders and hands."  <u>Id.</u>  He also noted that "[c]urrently, the

claimant is in pain daily that increases with sustained activities

such [as] writing or typing.  Prolong walking and standing also

increases the pain."  <u>Id.</u>  Although Dr. Espino did not believe

that Plaintiff actually had rheumatoid arthritis, he nonetheless

concluded that Plaintiff had "[c]hronic pain with diagnosis of

fibromyalgia."  AR 216.  Even with these findings, however, Dr.

Espino concluded that Plaintiff did "not have any restrictions

while standing, walking or sitting.  She can lift and carry

objects more than 40 pounds."  <u>Id.</u>  He also stated that Plaintiff

"can frequently climb, kneel, squat, stoop and bend."  AR 217.

These findings on Plaintiff's limitations are difficult, if not impossible, to reconcile with Dr. Espino's own diagnosis of chronic pain and fibromyalgia. Even the ALJ rejected Dr. Espino's finding that Plaintiff could lift more than 40 pounds. See AR 29. The two other consultative reports, for reasons stated previously, are even less compelling, especially in light of the fact that they were made without conducting an examination of Plaintiff.

For all the reasons stated above, the Court finds that the ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Plaintiff's treating physician. Lester, 81 F.3d at 830.

C.   Plaintiff's Credibility

Plaintiff argues that the ALJ erred in discounting her subjective statements regarding the severity of her pain. Although "[t]he ALJ is responsible for determining credibility and resolving conflicts in medical testimony," Saelee v. Charter, 94 F.3d 520, 522 (9th Cir. 1995) (internal quotation marks omitted), "[d]enial of benefits cannot be based on the ALJ's observation of [the claimant], when [the claimant's] statements to the contrary . . . are supported by objective evidence." Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985). If the ALJ does reject a claimant's testimony, he or she must provide "clear and convincing reasons" for doing so. Holohan, 246 F.3d at 1208. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834 (9th Cir. 1996). Moreover, this evidence must be "substantial." Holohan, 246 F.3d

16

at 1208.   For the following reasons, the Court finds that the
ALJ's justifications for rejecting Plaintiff's testimony are
neither clear and convincing nor supported by substantial
evidence.   Id.

During the hearing, Plaintiff testified as to the following:
her pain was too severe to permit her to return to her previous
job as a sales manager for a hot air balloon company; although she
suffers pain throughout her body, it is most focused in her
shoulders, neck, and head; she also suffers from extreme
exhaustion; the most activity she typically has in one day is
approximately 30 minutes of walking; she is able to do only a
little bit of housework at a time; she is unable to stand for a
significant length of time, and even has a seat in her shower; she
avoids buying gallons of milk because they are too difficult for
her to lift; she has good days and bad days, with, on average,
three bad days a week; on the bad days, she typically spends most
of her time lying down in her house; on bad days she is unable to
do housework or even take a shower; and on her good days she still
needs to lie down for roughly two hours in the afternoon.   AR 354-
64.

In discounting much of this testimony, the ALJ stated: "I
note that in addition to the lack of an objective medical basis
for the claimant's reported symptoms, her use of Motrin [an over
the counter pain reliever] for pain control indicates that her
pain is not as severe as she alleges, notwithstanding her desire
to avoid medication addiction." AR 28.   For the following
reasons, however, the Court finds these justifications for

United States District Court
For the Northern District of California

discounting Plaintiff's testimony to be insufficient.

First, for the reasons stated in section IV.B, <u>supra</u>, the Court finds that there are in fact numerous objective medical explanations for Plaintiff's pain and exhaustion. Sjogren's syndrome, fibromyalgia, and rheumatoid arthritis are the three most obvious examples. Second, the Ninth Circuit has held that where a claimant treats impairments with over-the-counter pain medication, this evidence of "'conservative treatment' is sufficient to discount a claimant's testimony regarding [the] severity of an impairment." <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir. 2007). Such reasoning, however, is undermined by circumstances such as Plaintiff's. It is undisputed that Plaintiff had previously been addicted to Vicondin. As several doctors noted in their reports, Plaintiff refused to take Vicodin or any other opiate-derivative pain medication out of the fear that it would lead her back into addiction. <u>See</u> AR 94, Pl.'s Disability Report (stating that she has a fear of relapsing on prescription drugs, especially Vicodin, when dealing with her pain issues); AR 166, Report by Dr. Flaherty at Kaiser Hospital (stating "Plaintiff cannot take opiates - has been addicted in pass [sic] - relapsed, is back in recovery"); AR 328, Report by Dr. Harrington (stating Plaintiff "makes every effort to avoid any narcotic or semi-narcotic medications"). In light of Plaintiff's history with pain killers and her laudable desire to remain clean, the Court cannot agree that her failure to use more powerful pain medication is an indication that her pain is not as severe as she states.

18

**United States District Court**
For the Northern District of California

1    The ALJ also pointed to various inconsistencies in

2  Plaintiff's testimony in support of an adverse credibility

3  finding.  For example, the ALJ noted that the "Kaiser records

4  reflect that the claimant reported sobriety November of 2003 and

5  January of 2004, while she was still working." AR 28.  The ALJ

6  found that this evidence "undermine[d] her testimony that she was

7  able to work only due to overuse of medications."  Id.  Plaintiff

8  also testified, however, that even as she was overusing

9  prescription drugs, her job "became increasingly more difficult."

10  AR 354.  After stating this, the following exchange occurred:

11        A: [by Plaintiff] -- and my, I would use
          Vicodin, the pain killer, to make it
12        possible to do the job.
          Q: [by the ALJ] Okay.  So you, as far as
13        you're concerned, you are taking Vicodin
          because of your physical problems --
14        A: Yes.
          Q: -- and you need to because of the
15        problems in order to physically do the
          job?
16        A: No, I'm an addict by nature.

17  AR 344-45.

18    This testimony, while open to several interpretations,

19  nonetheless indicates that, even with an addiction to painkillers,

20  Plaintiff's job was becoming increasingly difficult due to the

21  effects of her illnesses.  Moreover, that Plaintiff was able to

22  work for only for short periods in November 2003 and January 2004

23  while remaining sober would seem to support, rather than

24  undermine, her claim that she indeed needed powerful painkillers

25  to remain at work.

26    The remaining reasons provided by the ALJ for finding

27  Plaintiff's claims about the severity of her pain and limitations

28                                    19

**United States District Court**
For the Northern District of California

1  are also less than compelling.  The Court therefore finds that the

2  ALJ's adverse credibility finding was in error, as the ALJ did not

3  provide "clear and convincing reasons," supported by substantial

4  evidence, for his conclusion.  <u>Holohan</u>, 246 F.3d at 1208.

5       D.   <u>Past Relevant Work Experience</u>

6       At step four of the five-step disability analysis, "claimants

7  have the burden of showing that they can no longer perform their

8  past relevant work."  <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th

9  Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) & 416.920(e)).

10  "Although the burden of proof lies with the claimant at step four,

11  the ALJ still has a duty to make the requisite factual findings to

12  support his conclusion."  <u>Id.</u> (citing Soc. Sec. Ruling ("SSR") 82-

13  62).  "This is done by looking at the 'residual functional

14  capacity and the physical and mental demands' of the claimant's

15  past relevant work."  <u>Id.</u> at 844-45 (quoting 20 C.F.R. §§

16  404.1520(e) & 416.920(e)).  "The claimant must be able to perform:

17  1. The actual functional demands and job duties of a particular

18  past relevant job; or 2. the functional demands and job duties of

19  the occupation as generally required by employers throughout the

20  national economy."  <u>Id.</u> at 845 (citing SSR 82-61).  "This requires

21  specific findings as to the claimant's residual functional

22  capacity, the physical and mental demands of the past relevant

23  work, and the relation of the residual functional capacity to the

24  past work."  <u>Id.</u> (citing SSR 82-62).

25       "Residual functional capacity" is defined by the Social

26  Security Regulations as the most an individual can still do after

27  considering the effects of physical and/or mental limitations,

28

United States District Court
For the Northern District of California

including pain, on a claimant's ability to perform in a work setting.  20 C.F.R. § 404.1545.  In assessing a claimant's residual functioning capacity, an ALJ must "consider all symptoms, including pain, and the extent to which [these] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529.  The ALJ must also consider any medical opinions that might reflect judgments about the nature and severity of the impairments and resulting limitations.  20 C.F.R. § 404.1527.

In the present case, the ALJ determined that Plaintiff could perform her past relevant work as a sales representative for a hot air balloon company.  Based on Plaintiff's testimony, her psychologist's report, her treating physician's opinions, and the additional medical evidence, the Court finds that this determination is not supported by substantial evidence in the record and that Plaintiff is in fact unable to perform her past relevant work.

At her hearing, Plaintiff not only testified that she would be unable to return to her previous job, but she also testified that she is unable to get out of bed, on average, three days per week.  AR 356-59.  Plaintiff's examining psychologist stated that her mental difficulties would "would currently create generally moderate impairment in her overall working abilities, as well as in specific capacities for consistently attending work in a reliable manner and completing work tasks adequately."  AR 222.  Moreover, the VE who testified at the hearing stated that, based on his experience, "if a person is missing two days a month from

United States District Court
For the Northern District of California

work, on a consistent basis," that person is essentially

unemployable.  AR 372.  Based on this evidence alone, the Court is

bound to conclude that Plaintiff's impairments would force her to

miss too many days of work per month to be considered capable of

returning to her previous employment.

In addition, a "vocational expert's testimony in a disability

benefits proceeding is valuable only to the extent that it is

supported by medical evidence."  Gallant v. Heckler, 753 F.2d

1450, 1456 (9th Cir. 1984) (internal quotation marks omitted).  A

"hypothetical question should set out all of the claimant's

impairments."  Id. (internal quotation marks omitted).  In the

present case, despite significant evidence in the record regarding

the pain Plaintiff's medical conditions cause, the ALJ failed to

include any mention of this pain in the hypothetical he presented

to the VE.  See AR 366-73.  This omission is contrary to Ninth

Circuit precedent.  See Gallant, 753 F.2d at 1456 (stating

"[b]ecause claimant's allegations of persistent disabling pain are

supported by the medical evidence in this case and the ALJ had no

clear or convincing reasons for rejecting such claims, claimant's

pain should have formed a part of the ALJ's question to the

expert").  Given that the ALJ's hypothetical did not "set forth

all of [Plaintiff's] impairments, the vocational expert's

testimony cannot constitute substantial evidence to support the

ALJ's findings."  Id.

For these reasons, the Court finds that, at step four, there

is not substantial evidence to support the finding that Plaintiff

has the residual functional capacity to return to her previous job

**United States District Court**
For the Northern District of California

1    as a sales manager.

2        "If a claimant does not have the residual functional capacity

3    to perform past relevant work, then it is the Commissioner's

4    burden at step five to establish that the claimant can perform

5    other work." <u>Lewis</u>, 236 F.3d at 517.

6        Although the ALJ performed the analysis at step five, the

7    Commissioner concedes that the ALJ's finding at step five was

8    flawed.  <u>See</u> Def.'s Mot. at 3 n.1.  The Commissioner, therefore,

9    has not met its burden.  Even had the ALJ's step-five analysis not

10   been in error, there is more than sufficient evidence in the

11   record to conclude that Plaintiff is unable to perform other work.

12

13   **V.    Whether Remand Is Necessary**

14       "The decision to remand the case for additional evidence or

15   simply to award the benefits is within the discretion of the

16   court." <u>Erickson v. Shalala</u>, 9 F.3d 813, 819 (9th Cir. 1993).

17   Where the record is fully developed, remand is unnecessary.  <u>Id.</u>

18   In the present case, the record is fully developed and there are

19   no "outstanding issues that must be resolved before a

20   determination of disability can be made." <u>Harman v. Apfel</u>, 211

21   F.3d 1172, 1178 (9th Cir. 2000).  Nor would "additional

22   proceedings . . . remedy defects in the original administrative

23   proceeding . . . ." <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176-77 (9th

24   Cir. 1990) (internal quotation marks omitted).  The Court

25   therefore awards Plaintiff her benefits.

26       Although Plaintiff argues that the onset date of her

27   disability was February 2, 2004, the Court notes this was the date

28
                                   23

that she left work and entered treatment for addiction to painkillers.   The Court therefore finds that the earliest date on which onset of disability is supported by all of the medical evidence is December 30, 2004.   It was on this day that Plaintiff's treating physician submitted the "Fibromyalgia Residual Functional Capacity Questionnaire," described above.

**VI.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.   The matter is remanded to the Commissioner so that he may calculate and award benefits with an onset date of December 30, 2004.

IT IS SO ORDERED.

Dated: September 29, 2008

_____
UNITED STATES DISTRICT JUDGE

24